IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DRAPIKOWSKI, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MALVERN INSTITUTE, INC., | : | No. 21-39 |
| Defendant. | : | |

MEMORANDUM

**Schiller, J.**                                                                                                                    **December 1, 2021**

Plaintiff John Drapikowski alleges that Defendant Malvern Institute, Inc. ("Malvern") violated the Family and Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), Pennsylvania Human Relations Act ("PHRA"), and Pennsylvania's at-will employment doctrine by terminating him after he injured his shoulder and took FMLA leave, requested an accommodation, and filed for workers' compensation. Before the Court is Malvern's Motion to Dismiss Drapikowski's Amended Complaint, in which Malvern contends that the facts alleged fail to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court finds that Drapikowski has plausibly stated a claim for FMLA retaliation, ADA retaliation, PHRA retaliation, and wrongful termination under Pennsylvania common law, and will deny Malvern's motion as it relates to those claims. The Court will grant Malvern's motion to dismiss Drapikowski's PHRA discrimination claim. The Court will also grant Malvern's motion to dismiss Drapikowski's ADA discrimination claim, but only to the extent the claim involves Malvern's allegedly unlawful conduct occurring outside the limitations period.

**I.      FACTS**

Plaintiff Drapikowski was hired by Defendant Malvern as Facilities Manager of its Malvern, Pennsylvania location in 2010. (Amended Complaint [Am. Compl.] ¶ 22.) Drapikowski

1

became Facilities Manager of a second location in 2017. (*Id.* ¶ 24.) He performed his job well and received solid yearly performance reviews. (*Id.* ¶¶ 23, 58.)

Drapikowksi underwent at least two surgical procedures between 2010 and 2019 that prevented him from performing his job at full duty. In 2013, he underwent a hernia surgery. (*Id.* ¶ 43.) In 2017, he underwent carotid artery surgery. (*Id.* ¶ 44.) Both times he was placed on light duty as he recovered and was responsible for answering phones and handling paperwork in lieu of his normal duties that included more taxing manual labor. (*Id.* ¶¶ 42-44.)

On January 29, 2019, Drapikowski injured his right shoulder while attempting to lift a manhole cover at work. (*Id.* ¶ 25.) He immediately reported his injury to Louis Merlini, Malvern's Vice President, and filed a workers' compensation claim. (*Id.* ¶ 27.) He received treatment for his injury at an urgent care center. (*Id.* ¶ 28.) Drapikowski returned to work the following day on light duty. (*Id.* ¶ 29.) He was later referred to an orthopedic surgeon, who diagnosed him with a torn rotator cuff and determined that he needed surgery. (*Id.* ¶¶ 30-31.) Drapikowski had shoulder surgery on February 23, 2019. (*Id.* ¶ 32.)

Drapikowski thereafter began receiving workers' compensation and was placed on a medical leave of absence through the FMLA. (*Id.* ¶ 33.) In March 2019, while Drapikowski was on leave, Malvern terminated Merlini and replaced him with Kevin Williams. (*Id.* ¶ 34.) At some point after Williams became Vice President, he asked Drapikowski when he thought he would be able to come back to work. (*Id.* ¶ 35.) Drapikowski replied that his doctor had not yet cleared him to do so. (*Id.*)

Drapikowski was cleared to return to work around the end of May 2019. (*Id.* ¶ 36.) His doctor told him that he could not lift, push, or pull more than ten pounds. (*Id.*) Drapikowski told Williams about his restrictions and asked if he could return to Malvern on light duty. (*Id.*)

Williams, however, refused to allow Drapikowski to return and informed him that "[w]e don't have anything like that for you." (*Id.* ¶¶ 36, 39.) As a result, Drapikowski remained on unpaid leave. (*Id.* ¶¶ 39, 41.)

Drapikowski asked if he could return to Malvern on light duty once more in June 2019. (*Id.* ¶ 40.) Williams again informed him that Malvern did not have light duty work available. (*Id.*) Drapikowski's unpaid leave continued. (*Id.* ¶¶ 40-41.)

In August 2019, Malvern allowed Drapikowski to return to work on light duty. (*Id.* ¶¶ 45-46.) Drapikowski's tasks included creating lists and charts regarding safety compliance at Malvern's facilities. (*Id.* ¶ 47.) After returning to work, Drapikowski started to receive feedback that made him nervous about his continued employment at Malvern. (*Id.* ¶ 48.) Specifically, in October or November 2019, Sean Kelly, Malvern's newly employed Facilities Director, told Drapikowski that he "can't find anything wrong that you did. We can't find any reason to get rid of you." (*Id.* ¶ 49.)

Drapikowski's doctor cleared him to work without restrictions on December 3, 2019. (*Id.* ¶ 50.) He immediately notified Malvern and returned to full duty. (*Id.* ¶¶ 51-52.) Williams then began to nitpick Drapikowski's work product and reprimanded him for an incident that occurred while Drapikowski was on his leave of absence. (*Id.* ¶ 53.) Before attending a meeting together, Drapikowski asked Williams whether he was "going to terminate me this week," to which Williams replied, "not this week." (*Id.* ¶ 54.)

On December 16, 2019, Drapikowski met with Williams and Kelly. (*Id.* ¶ 55.) They terminated him, citing a fire panel that had not been certified. (*Id.*) Williams and Kelly told Drapikowski that they had discovered the fire panel one month prior and that he "was going to be blamed for it." (*Id.* ¶ 56.) Meanwhile, the fire marshal certified that the building in question was

in compliance with the fire code. (*Id.* ¶ 57.) Drapikowski was no longer covered under workers' compensation at the time of his termination. (*Id.* ¶ 60.)

Drapikowski dually filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and an administrative complaint with the Pennsylvania Human Relations Commission ("PHRC") on April 8, 2020. (*Id.* ¶ 16.) The EEOC issued Drapikowski a Notice of Right to Sue on October 6, 2020. (*Id.* ¶ 17.)

Drapikowski timely filed suit against Malvern on January 5, 2021 and filed an Amended Complaint on January 26, 2021. The Amended Complaint asserts six counts: Count I alleges retaliation under the FMLA[1]; Count II alleges discrimination under the ADA; Count III alleges discrimination under the PHRA; Count IV alleges retaliation under the ADA; Count V alleges retaliation under the PHRA; and Count VI alleges wrongful termination as recognized by Pennsylvania common law. Malvern moved to dismiss all counts on February 4, 2021. Drapikowski responded on March 4, 2021, and Malvern filed a reply on March 9, 2021.

## II.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss for failure to state a claim, a court must accept as true all factual allegations in the

---

[1] In its motion, Malvern oddly attempts to mold Count I into a claim for FMLA interference. (Defendant's Motion to Dismiss [Def.'s Mot.] at 8.) But the Amended Complaint clearly asserts a claim for FMLA retaliation. Drapikowski titles Count I "Discrimination/Retaliation, Family and Medical Leave Act"; he contends that "Defendant has retaliated against Plaintiff by terminating his employment"; and he uses the word "retaliation" two more times when describing Count I. (Am. Compl. ¶¶ 66-68.) As Drapikowski plainly states in his response to Malvern's motion, "there is no FMLA interference claim in the Amended Complaint." (Plaintiff's Opposition to Defendant's Motion to Dismiss [Pl.'s Opp.] at 9.) Malvern later addresses Count I in tandem with Drapikowski's ADA retaliation and PHRA retaliation claims, which the Court discusses *infra* Section II.B. To the extent Malvern attempts to dismiss a (non-existent) FMLA interference claim, Malvern's motion is denied.

complaint and draw all reasonable inferences in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). To survive, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint has facial plausibility when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.  DISCUSSION

#### A.  Counts II and III: ADA and PHRA Discrimination

Malvern argues that Drapikowski's PHRA and ADA discrimination claims are both time barred by the applicable statutes of limitations. Drapikowski counters that his claims are not time barred because Malvern's denials of his requests to be placed on light duty constituted a "continuing violation" of both statutes that ran into the limitations period.

To bring suit for discrimination under the PHRA, an administrative complaint must first be filed with the PHRC within 180 days of the alleged unlawful employment practice. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 164-65 (3d Cir. 2013); 43 PA. STAT. AND CONS. STAT. ANN. § 959(h) (West). To bring suit for discrimination under the ADA in situations where the individual has also initiated proceedings with a state or local agency, a charge must first be filed with the EEOC within 300 days of the alleged unlawful employment practice. *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 325 (E.D. Pa. 2018); 42 U.S.C. § 2000e-5(e)(1). However, under the "continuing violation" theory, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991).

In this Circuit, the so-called "Third Circuit Rule" permits defendants to raise limitations defenses in a 12(b)(6) motion instead of their answer. *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). The "Third Circuit Rule," however, is only applicable if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* In other words, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978).

Drapikowski alleges that he was first denied accommodation "[i]n or around the end of May 2019." (Am. Compl. ¶¶ 36, 39.) He also alleges that he was denied accommodation "[a]gain, in June 2019." (*Id.* ¶ 40.) Drapikowski filed both his complaint with the PHRA and his charge with the EEOC on April 8, 2020. (*Id.* ¶ 16; Def.'s Mot. Ex. B.) Interpreting "the end of May" and "June 2019" as generously as possible would place Drapikowski's first request on May 31, 2019 and his second on June 30, 2019—either 313 or 283 days before April 8, 2020. This means that his PHRA discrimination claim unquestionably fails.

To the extent Drapikowski's ADA discrimination claim involves allegedly unlawful conduct that took place more than 300 days before April 8, 2020, it must fail as well. Drapikowski argues that Malvern's decision to allow him to return to work on light duty in August 2019 "indicates that Defendant viewed Plaintiff's repeated requests as outstanding rather than separate and discrete acts" and the "requests should be viewed as a continuing violation that ran well into the applicable limitations period." (Pl.'s Opp. at 12.) But Drapikowski cites no authority, either within or outside this Circuit, in support of the proposition that the limitations period is measured based on the date on which a requested accommodation was provided, or that repeated requests for an accommodation that is eventually provided hold the initial request "open" during the interim

6

period. Instead, the limitations period begins on the date on which an employer denies an employee's request for accommodation, and each denial constitutes a "discrete event." *Mercer v. Se. Pa. Transit Auth.*, 608 F. App'x 60, 63 (3d Cir. 2015); *Leonard v. Se. Pa. Transit Auth.*, Civ. A. No. 20-2033, 2021 WL 229397, at *4 (E.D. Pa. Jan. 22, 2021). Critically, "the Supreme Court has explicitly rejected the use of [the continuing violation] doctrine to preserve time barred claims for discrete discriminatory acts." *Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 93 (3d Cir. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002)). Consequently, Drapikowski's argument that the continuing violation theory applies here fails.

But more questions must be answered before Drapikowski's ADA discrimination claim fails in totality. First, the Amended Complaint does not provide a concrete date on which Drapikowski's June request for light duty was denied. If this denial occurred before June 13, 2019, then it falls outside the limitations period. But if it occurred on or after June 13, 2019, then it falls within the ADA's 300-day limitations period. The "Third Circuit Rule" therefore may not be invoked in relation to Drapikowski's ADA discrimination claim insofar as it relates to his June 2019 request because "the bar is not apparent on the face of the complaint." *Bethel*, 570 F.2d at 1174. In other words, "[b]ecause the Amended Complaint does not pinpoint the exact date or dates that [Drapikowski] sought accommodation, this Court can—and therefore, at this stage, must—infer that his request for accommodation occurred" within the limitations period. *Tanner v. Kawneer N. Am.*, Civ. A. No. 18-2295, 2019 WL 2160463, at *2 (M.D. Pa. May 17, 2019) (citing *Wilson v. Mount Airy #1, LLC*, Civ. A. No. 15-249, 2015 WL 8331869, at *4 (M.D. Pa. Dec. 9, 2015)); *see also Sperry v. Archdiocese of Phila.*, Civ. A. No. 19-2615, 2019 WL 5539011, at *4 (E.D. Pa. Oct. 24, 2019) (declining to decide whether ADA discrimination claim was time barred at the motion to dismiss stage when plaintiff made multiple requests for accommodation and "at

least part of [plaintiff's] failure to accommodate claim is undeniably timely"); *Ragusa v. Lehigh Univ.*, Civ. A. No. 18-3362, 2019 WL 3573516, at *5 (E.D. Pa. Aug. 6, 2019) (declining to decide whether ADA discrimination claim was time barred at the motion to dismiss stage when plaintiff made two requests for accommodation because "the fact that the initial request was made outside the limitations period has no bearing on the separate request made inside the limitations period" and "the question of whether a request for an accommodation made within the limitations period is an entirely new request or merely a request for reconsideration of the denial of the request made outside the limitations period is one for a reasonable jury to decide").

Further, discovery is needed to answer open questions regarding the substance of Drapikowski's claim. Drapikowski and Malvern take divergent paths in arguing that their side should prevail. Malvern's motion focuses entirely on arguing that placing Drapikowski on unpaid leave after he requested light duty constituted a reasonable accommodation; Drapikowski's response does not address whether unpaid leave may be considered a reasonable accommodation under either this or any set of circumstances. Instead, Drapikowski's response focuses entirely on arguing that Malvern did not engage in the interactive process when it denied his request for light duty; Malvern's motion does not address the interactive process at all.

An employee's request for an accommodation triggers both sides' duty to participate in the "interactive process." *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997). Specifically, employers are required to make reasonable efforts to communicate with their employee in good faith and assist their employee in determining whether an accommodation is reasonable. *Id.*; *see also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of accommodation."). An employee can demonstrate that his employer failed to participate

in the interactive process by establishing that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999).[2]

Taking the allegations in the Amended Complaint as true, as the Court must at this stage, the Court finds that Drapikowski has plausibly alleged that Malvern's denial of his request to be placed on light duty constituted a breakdown in the interactive process. Specifically, Drapikowski has sufficiently alleged that Williams prevented him from returning to work by starkly denying his request for accommodation, and that Drapikowski could have received a reasonable accommodation but for Williams's and Malvern's lack of good faith communication. (Am. Compl. ¶ 40.) According to the Amended Complaint, Williams informed Drapikowski that Malvern did not have light duty work available and thus he could not return to work, even though he was placed on light duty the day after he suffered his shoulder injury in early 2019, as well as after his 2013 and 2017 surgeries. (*Id.* ¶¶ 29, 40-44.) Drapikowski was instead forced to take unpaid leave. (*Id.* ¶¶ 40-44.) He also was never provided a clear explanation as to why light duty was unavailable between May and August 2019. (*Id.* ¶ 47.)

It is also an open question as to whether unpaid leave actually is a reasonable accommodation in this context. Malvern is correct that an employer is not obligated to provide an employee the accommodation he requests or prefers if another reasonable accommodation is instead provided. *See Kortyna v. Lafayette Coll.*, 47 F. Supp. 3d 225, 242 (E.D. Pa. 2014) (citing

---

[2]   Defendant does not contest that Malvern knew about Drapikowski's disability or that Drapikowski requested accommodations or assistance for his disability.

*Yovtcheva v. City of Phila. Water Dept.*, 518 F. App'x 116, 122 (3d Cir.2013)); *Solomon v. Sch. Dist. of Phila.*, 882 F. Supp. 2d 766, 779 (E.D. Pa. 2012). And Malvern is also correct that, in some instances, unpaid leave constitutes a reasonable accommodation. *See Brady v. United Refrigeration, Inc.*, Civ. A. No 13-6008, 2015 WL 3500125, at *12 (E.D. Pa. June 3, 2015); *Aspen v. Wilhelmsen Ships Serv.*, Civ. A. No. 13-6057, 2015 WL 1020660, at *5 (E.D. Pa. Mar. 9, 2015). Nevertheless, neither Drapikowski nor Malvern cites to a case in which a court explores whether unpaid leave constitutes a reasonable accommodation even after an employee requests, and is denied, alternate accommodation through which they would still be paid. This, of course, would turn on whether the interactive process that led to the employee taking unpaid leave was conducted in good faith. *See Blassingame v. Sovereign Sec., LLC*, Civ. A. No. 17-1351, 2017 WL 3390199, at *10 (E.D. Pa. Aug. 7, 2017) (declining to dismiss ADA discrimination claim when defendant refused to transfer plaintiff and instead placed her on unpaid leave because "such allegations allow for the reasonable inferences that . . . [defendant failed] to engage in the interactive process"); *Mills v. Temple Univ.*, 869 F. Supp. 2d 609, 624 (E.D. Pa. 2012) ("[Defendant's] offer of unpaid leave does not establish, as a matter of law, that it acted in good faith.").

As noted above, Drapikowski does not address the reasonableness of unpaid leave at all. And Malvern solely cites to cases involving employees requesting unpaid leave as an accommodation, a critical distinction from the Amended Complaint, in which Drapikowski alleges that he "was forced to take unpaid leave." (Am. Compl. ¶ 41; Def.'s Mot. 15-16.) *Fogleman* (*see* Def.'s Mot. at 15) involved an employee who explicitly sought an unpaid leave of absence, which the Third Circuit ultimately held did not constitute a reasonable accommodation because her "requested leave was for an indefinite and open-ended period of time." *Fogleman v. Greater Hazleton Health All.*, 122 F. App'x 581, 585-86 (3d Cir. 2004). And *Moore* (*see* Def.'s Mot. at

10

15-16), which also involved an employee who explicitly sought leave, is even more distinguishable because the employee ultimately received *paid* leave. *Moore v. CVS Rx Servs.*, 142 F. Supp. 3d 321, 338 (M.D. Pa. 2015), *aff'd*, 660 F. App'x 149 (3d Cir. 2016).

The well-pleaded allegations of the Amended Complaint thus require that Drapikowski's ADA discrimination claim survives to the extent it involves Malvern's allegedly unlawful conduct occurring within the 300 days before April 8, 2020. Accordingly, Malvern's motion to dismiss Drapikowski's ADA claim is granted in part and denied in part. Malvern's motion to dismiss Drapikowski's PHRA discrimination claim is granted.

### B. Counts I, IV, V, and VI: FMLA Retaliation, ADA Retaliation, PHRA Retaliation, and Common Law Wrongful Termination Claims

Malvern argues that Drapikowski's claims for FMLA retaliation, ADA retaliation, PHRA retaliation, and wrongful termination all should be dismissed because the Amended Complaint does not contain facts sufficient to demonstrate causation.[3]

The FMLA, ADA, and PHRA all prohibit employers from retaliating against employees who assert their statutory rights. *See* 29 U.S.C. §2615(a)(2); 29 C.F.R. § 825.220(c); 42 U.S.C. § 12203(a); 43 PA. STAT. AND CONS. STAT. ANN. § 955(d) (West). And Pennsylvania recognizes a common law cause of action for wrongful termination of an at-will employee in retaliation for filing for workers' compensation. *Shick v. Shirey*, 716 A.2d 1231, 1237-38 (Pa. 1998). For these types of claims to survive the motion to dismiss stage, an employee must demonstrate a causal connection between the employee's protected conduct and an adverse employment action taken on the part of the employer. *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-

---

[3] Defendant does not contest the other elements of Drapikowski's retaliation or wrongful termination claims.

02 (3d Cir. 2012); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *see also Taylor*, 184 F.3d at 306 (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)) ("[The] analysis of an ADA claim applies equally to a PHRA claim."); *Schall v. Ronak Foods*, Civ. A. No. 19-1463, 2019 WL 4034765, at *2 (E.D. Pa. Aug. 27, 2019) (citing *Theriault v. Dollar General*, 336 F. App'x 172, 175 (3d Cir. 2009)) ("While the Pennsylvania Supreme Court has not set forth the precise elements of such a retaliation claim, the Third Circuit . . . has predicted that the Pennsylvania Supreme Court would apply the framework for Title VII claims to Pennsylvania retaliation claims.").

Defendant maintains that because "Plaintiff's termination took place ten [] months after his request for FMLA leave and more than six [] months after he requested light duty, Plaintiff cannot establish a causal connection sufficient to establish a plausible claim for retaliation." (Def.'s Mot. at 18.) Defendant is correct that courts in the Third Circuit have consistently held that months-long interim periods between an employee's protected conduct and his employer's alleged retaliation is not unusually suggestive of the employer's retaliatory motive without more. *See Kissinger v. Mennonite Home*, Civ. A. No. 20-3000, 2021 WL 5356801, at *13 (E.D. Pa. Nov. 17, 2021) (Schiller, J.) (collecting cases). But, as Drapikowski points out, "courts will consider 'a broad array of evidence' in determining whether a sufficient causal link exists." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n.*, 503 F.3d 217, 232 (3d Cir. 2007). Critically, even if there is a long interim period, the Court may infer causation where an employer engages in a pattern of antagonism between the time an employee engaged in the protected conduct and the adverse employment action. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). While engaging in this highly fact-specific inquiry, the Court considers "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer

gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015); *Artz v. Cont'l Cas. Co.*, 720 F. Supp. 2d 706, 715 (E.D. Pa. 2010) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-81 (3d Cir. 2000)); *Theriault*, 336 F. App'x at 175.

Here, Drapikowski has plausibly alleged a pattern of antagonism on the part of Malvern. According to the Amended Complaint, Williams refused to allow Drapikowski to return to work on light duty and forced him to take unpaid leave, even though he had been placed on light duty in 2013, 2017, and early 2019, and he was provided no reason for why light duty was unavailable between May and August 2019. (*See* Am. Compl. ¶¶ 40-47.) Drapikowski alleges that he faced nitpicking and baseless criticism after he eventually returned to Malvern at full duty, including by being reprimanded for an incident that occurred while he was still on leave. (*See id.* ¶¶ 48-57.) He further alleges that he received feedback indicating that Malvern was attempting to push him out, including from Kelly, who allegedly told him that he "can't find anything wrong that you did. We can't find any reason to get rid of you." (*Id.* ¶¶ 48-49.) In response to Drapikowski asking whether Williams was "going to terminate [him] this week," Williams allegedly responded, "[n]ot this week." (*Id.* ¶ 54.) Drapikowski also alleges that he was ultimately terminated after being told by Williams and Kelly that he "was going to be blamed for" an uncertified fire panel that had been discovered the month prior and despite the fire marshal certifying that the building in question complied with the fire code. (*Id.* ¶ 55-57.)

Thus, the Amended Complaint contains facts sufficient to support antagonistic conduct on the part of Malvern, and, in tandem, causation. Drapikowski's FMLA, ADA, and PHRA retaliation claims thus survive, as does his wrongful termination claim.

## IV. CONCLUSION

For the reasons set forth above, Malvern's motion to dismiss is granted in part and denied in part. Malvern's motion to dismiss Drapikowski's PHRA discrimination claim is granted. Malvern's motion to dismiss Drapikowski's ADA discrimination claim is granted to the extent the claim relates to Malvern's allegedly unlawful conduct occurring outside the 300 days before April 8, 2020. Malvern's motion to dismiss Drapikowski's FMLA retaliation, ADA retaliation, PHRA retaliation, and Pennsylvania wrongful termination claims is denied. An Order consistent with this Memorandum will be docketed separately.